IN THE UNITED STATES DISTRICT COURT FOR
SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| IRON CREEK VENTURES, INC. | ) | Civil Action No.: 7:09-185-HFF |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **CONSENT DECREE OF** |
| SOUTHERN SUITES SPARTANBURG, LLC, | ) | **FORECLOSURE AND** |
| | ) | **SALE OF PROPERTY** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court upon the motion of Plaintiff Iron Creek Ventures, Inc. ("Iron Creek") for the entry of an Order of Foreclosure setting a date of sale and the terms under which such sale should take place. Defendant Southern Suites Spartanburg, LLC ("SS Spartanburg") consents to this Motion.

Plaintiff filed the Complaint in this matter on January 1, 2009 seeking a judicial determination of the amount due under the Note and Mortgage held by Defendant and exhibits to the Complaint, a determination that such Note and Mortgage constituted first liens, a judgment for foreclosure and a judicial sale of the property. Plaintiff also sought the appointment of a receiver to manage the property in the interim. Defendant filed its Answer on February 24, 2009, which in part consented to the entry of judgment for foreclosure, a judicial sale and the appointment of a receiver. With the consent of Defendant, the Court entered an Order Appointing Receiver on February 24, 2009. The Consent Motion for Entry of Order of Foreclosure now before the Court was filed on May 12, 2009.

Having reviewed the submissions of the parties herein and with the consent of Plaintiff and Defendant, the Court makes the following Findings of Fact and Conclusions of Law.

## **FINDINGS OF FACT**

1.      Iron Creek is a corporation organized under the laws of the State of Texas with its principal place of business at 5750 Genesis Court, Suite 130, Frisco, Texas 75034.

2.      SS Spartanburg is a limited liability company organized under the laws of the State of South Carolina with its principal place of business located at 1993 Reidville Road, Spartanburg, South Carolina 29301.

3.      Pursuant to that certain Construction Loan Agreement dated December 1, 1999, entered into by and between SS Spartanburg and Wachovia Bank, N.A. (the "Original Lender") (as assumed, amended and modified from time to time, the "Loan Agreement"), SS Spartanburg received a loan from Original Lender in the original principal amount of Two Million Two Hundred Eighty Three Thousand and 00/100 Dollars ($2,283,000.00) (the "Loan"). *See ¶* 4 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

4.      The Loan is evidenced by that certain Promissory Note, dated December 1, 1999, made by SS Spartanburg in favor of Original Lender in the original stated principal amount of the Loan (as assumed, amended and modified from time to time, the "Note"). *See ¶* 5 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

5.      Original Lender assigned the Loan to Equity Bank, SSB ("Equity Bank") by that certain Assignment of Loan dated December 20, 2007 and as further evidenced by that certain Allonge attached to the Note dated December 20, 2007 ("Allonge 1"). *See ¶* 6 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

6.      Equity Bank assigned the Loan to Plaintiff, Iron Creek Ventures, Inc., as evidenced by that certain Allonge attached to the Note dated September 19, 2008 ("Allonge 2"). *See ¶* 7 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

7.      The Loan is secured by, among other things, that certain Leasehold Mortgage/Mortgage and Security Agreement dated December 1, 1999, executed by SS Spartanburg in favor of Original Lender, and recorded on December 3, 1999, at Book 2285, Page 669, in the public land records of the Register of Deeds for Spartanburg County, South Carolina (the "Recording Office") (as assumed, amended and modified from time to time, the "Mortgage"). *See ¶* 8 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

8.      The Mortgage conveys a lien to and interest in, among other collateral and without limitation, certain real property located in Spartanburg County, South Carolina, including an extended-stay hotel (the "Facility") known as Southern Suites (together with all property and collateral described in the Mortgage, collectively, the "Mortgaged Property"). As described in the Mortgage, Defendant granted Plaintiff a first-priority, perfected security interest in the Mortgaged Property and all other property now owned or hereinafter acquired as defined in the Mortgage, including without limitation, the land, estates, easements, rights, improvements, personal property, fixtures, equipment, furniture, furnishings, appliances and appurtenances, including replacements and additions thereto, buildings structures and improvements, issues, profits, revenues, proceeds, leases and leasehold estates (collectively, the "Personal Property Collateral" and, together with the Mortgaged Property, collectively, the "Collateral"). *See ¶* 9 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

9. The Mortgage was assigned by Original Lender to Equity Bank by that certain Assignment of Note, Mortgage and Loan Documents dated December 20, 2007 and recorded in the Recording Office on February 6, 2008 at Book 4034, Page 025, Instrument 2008-5905 (the "Equity Bank Assignment"). *See ¶* 10 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

10. The Mortgage was assigned by Equity Bank to Plaintiff Iron Creek Ventures by that certain Assignment of Note, Leasehold Mortgage/Mortgage and Security Agreement dated September 19, 2008 and recorded in the Recording Office on October 8, 2008 at Book 4143, Page 886, Instrument 2008-47961 (the "Iron Creek Assignment"). *See ¶* 11 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

11. Original Lender perfected its interest in the Personal Property Collateral by filing that certain UCC-1 Financing Statement with the South Carolina Secretary of State (the "Secretary of State") on March 10, 2000, at Instrument Number 000310-092508A (as assumed, amended, assigned, continued and modified from time to time, the "Financing Statement"), which was continued by that certain UCC-3 Financing Statement Amendment filed with the Secretary of State on October 18, 2004, at Instrument Number 041018-1029272. *See ¶* 12 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

12. The Financing Statement was assigned to Equity Bank by that certain UCC-3 Financing Statement Amendment filed with the Secretary of State on January 23, 2008, at Instrument Number 080123-1228342. *See ¶* 13 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

13. The Financing Statement was assigned to Plaintiff Iron Creek Ventures by that certain UCC-3 Financing Statement Amendment filed with the Secretary of State on December 23,

2008, as Instrument 081223-1417491.  *See ¶* 14 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

14. Original Lender further perfected its interest in the Personal Property Collateral by filing that certain UCC-1 Financing Statement with the Recording Office on December 31, 1999, at Instrument Number 99-03154 (as assumed, amended, assigned, continued and modified from time to time, the "Fixture Filing"), which was continued by that certain UCC-3 Financing Statement Amendment filed with the Recording Office on August 13, 2004 at Instrument Number 04-4327.  *See ¶* 15 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

15. The Fixture Filing was assigned to Equity Bank by that certain UCC-3 Financing Statement Amendment filed with the Recording Office on January 23, 2008 at Instrument Number 08-0029.  *See ¶* 16 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

16. The Fixture Filing was assigned to Plaintiff Iron Creek Ventures by that certain UCC-3 Financing Statement Amendment filed with the Recording Office on December 30, 2008, as Instrument Number 2008-58449.  *See ¶* 17 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

17. The Loan is further secured by, among other things, that certain Assignment of Rents and Leases dated December 1, 1999, executed by SS Spartanburg in favor of Original Lender, and recorded on December 3, 1999, at Book DEED71B, Page 845, in the Recording Office (as assumed, amended and modified from time to time, the "Assignment of Rents").  *See ¶* 18 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

18. Pursuant to the Assignment of Rents and the Mortgage, SS Spartanburg absolutely assigned all of its right, title and interest in all rents, profits, royalties and other income and revenues

from the Mortgaged Property, including the Facility, (collectively, the "Rents") to Original Lender. *See ¶* 19 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

19.     The Assignment of Rents was assigned to Equity Bank by the Equity Bank Assignment. *See ¶* 20 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

20.     The Assignment of Rents was assigned to Plaintiff Iron Creek Ventures by the Iron Creek Assignment. *See ¶* 21 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

21.     Due to the existence of certain events of default, SS Spartanburg, Robert A. Sowinski and Original Lender entered into that certain Forbearance Agreement dated May 1, 2007, which was amended by that certain First Amendment to Forbearance Agreement dated December 1, 2007 (as assumed, amended and modified from time to time, the "Original Forbearance Agreement"). *See ¶* 22 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

22.     The Original Forbearance Agreement provided, among other things, that all principal and accrued interest on the Loan was due and payable on March 1, 2008 (the "Maturity Date"). *See ¶* 23 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

23.     Equity Bank, SS Spartanburg and Guarantor entered into that certain Forbearance Agreement effective as of March 1, 2008 (the "Second Forbearance Agreement"), which provided among other things, an extension of the Maturity Date to April 30, 2008. *See ¶* 24 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

24.     All documents evidencing, securing or in any way related to the Loan, including, without limitation, the Loan Agreement, the Note, the Allonge 1, the Allonge 2, the Mortgage, the Assignment of Rents, the Equity Bank Assignment, the Iron Creek Assignment, the Fixture Filing, the Financing Statement, the Original Forbearance Agreement, the Second Forbearance Agreement,

and any amendments or modifications thereto are referred to collectively herein as the "Loan Documents".  *See ¶ 25* of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

25. Equity Bank and SS Spartanburg entered into that certain Extension and Modification Agreement effective on April 30, 2008, which would have extended the Maturity Date of the Loan until September 1, 2009.  However, the agreement required, as conditions precedent to the extension of the Maturity Date, for SS Spartanburg to make certain payments and execute and deliver certain documents, which conditions precedent have not been satisfied.  Therefore, the Extension and Modification Agreement was and is null and void.  *See ¶ 26* of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

26. The Loan Documents were assigned by Equity Bank to Plaintiff Iron Creek by the Iron Creek Assignment.  *See ¶ 27* of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

27. The Note requires, among other things, for SS Spartanburg to make monthly payments of principal and interest.  The Note provides that SS Spartanburg will be charged late fees if monthly payments of principal and interest are delinquent, that delinquent payments will accrue interest at a default interest rate, and that SS Spartanburg shall pay Plaintiff's expenses with respect to the costs of collection or enforcement of the Note.  *See ¶ 28* of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

28. SS Spartanburg has failed to make payments of principal and interest due under the Note, including, without limitation, payments due to Plaintiff in December, 2008 and January, 2009.  As a result, various Events of Default have occurred under the Loan Documents.  *See ¶ 29* of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

29. Furthermore, the Maturity Date for the Loan was April 30, 2008 and all amounts and obligations under the Note (collectively, the "Loan Obligations") are significantly past due and owing. *See ¶* 30 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

30. By letter dated December 9, 2008, Plaintiff, by and through counsel, notified Defendant of the default and maturity under the Note, Mortgage, and other Loan Documents (the "Default Notice"). Plaintiff also demanded payment of all Loan Obligations. *See ¶* 31 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

31. The Loan Documents provide, among other things, that in the instance of an Event of Default, Plaintiff has the right to foreclose the Mortgage and pursue any other available remedy, including without limitation, the appointment of a receiver, taking possession of the Facility, and collecting the Rents. *See ¶* 32 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

32. As of May 15, 2009, the Loan Obligations totaled $2,252,422.90, including a principal balance of $2,174,052.54 and $78,370.36 interest. The loans continue to accrue inter at a per diem rate of $362.34. *See ¶* 33 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

33. Pursuant to the Loan Documents, SS Spartanburg must reimburse Plaintiff for costs and expenses incurred by Plaintiff in connection with enforcing and collecting the Loan Obligations including without limitation, all attorneys' fees and other costs of collection and costs of insuring, protecting, maintaining and disposing of the Mortgaged Property. *See ¶* 34 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

34. Interest continues to accrue under the Note at the default interest rate of interest from and after May 15, 2009. Plaintiff continues to incur costs and expenses, including attorneys' fees. *See ¶* 35 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

35. SS Spartanburg has failed to pay the outstanding balance of the Loan Obligations due and owing to Plaintiff.  *See ¶* 36 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

36. By letter dated December 22, 2008, Plaintiff, by and through counsel, notified Defendant that Plaintiff was exercising its right to collect the Rents and revoked SS Spartanburg's license to collect the Rents (the "Rents Notice").  *See ¶* 37 of Affidavit of Mark Self (Exhibit 1 to Verified Complaint).

## CONCLUSIONS OF LAW

37. This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332.  There is diversity between the parties and the amount in controversy exceeds $75,000.00.

38. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(A).

39. The Mortgage encumbers the Mortgaged Property located in the County of Spartanburg, State of South Carolina, and described more specifically herein.

40. The Mortgage constitutes a first priority lien on the Mortgaged Property.

41. The Mortgage expressly secures the total Loan Obligations, including the Note, due and owing on the Note.

42. The Defendant SS Spartanburg's failures to make payments when due on the Note constitute Events of Default under the Mortgage.

43. The Mortgage is also a continuing first priority security interest on all personal property of Defendant SS Spartanburg now owned or hereinafter acquired.

44. The Financing Statement and Fixture Filing perfected Plaintiff's security interest in the Personal Property Collateral described in the Loan Documents and create and perfect a first priority lien security interest over the Collateral described in the Loan Documents.

45. Since various Events of Default have occurred, by virtue of Plaintiff's security interest in the collateral obtained in the Mortgage, Financing Statement and Fixture Filing, the Plaintiff is entitled to immediate possession of all collateral identified in the Mortgage, Financing Statement and Fixture Filing.

46. Plaintiff is entitled to foreclosure of the Mortgage on the Mortgaged Property and to proceed as to both the personal property and real property described in the Loan Documents free and clear of any adverse interests or liens.

**NOW, THEREFORE, upon the Motion of Plaintiff, and with the consent of Defendant, it is,**

**ORDERED, ADJUDGED AND DECREED**

1. As of May 15, 2009, Defendant Southern Suites Spartanburg, LLC, is indebted to Plaintiff in the amount of $2,252,422.90, which amount includes principal and interest, exclusive of other costs including attorneys fees. Demand has been made upon the Defendant for payment of the amount due without success.

2. Plaintiff shall have judgment of foreclosure of its Mortgage against Defendant, and Defendant, and all persons claiming by, through, or under her, are hereby forever barred from all right, title, interest and equity of redemption in and to the mortgaged premises hereinabove described, or to any part thereof.

3. The United States Marshal or a duly authorized Deputy, after having advertised for sale the mortgaged premises including all fixtures, personal or other property as referenced in the Loan Documents, once a week for four weeks prior to sale as required by 28 U.S.C. § 2002, shall sell the mortgaged premises described in the Complaint subject to ad valorem taxes, at public

auction before the door of the Spartanburg County Courthouse at the usual hour of public sale on any convenient date set by the Marshal and stated in the published notice of sale.

4. In conducting the sale, the United States Marshal or a duly authorized Deputy shall require the highest bidder, other than Plaintiff, to make a cash deposit of five percent (5%) of the bid as earnest money and as evidence of good faith. (The balance of the bid shall be paid in cash, by certified check or cashier's check.) If Plaintiff is the successful bidder at the sale, the amount due on its Mortgage may be used as the equivalent of cash. Should the person making the highest bid at the sale fail to comply with the terms of the bid by depositing the said five percent (5%) in cash, then the premises shall be resold at such bidder's risk on the same sales date, or some subsequent date, as the selling officer my find convenient and advantageous. Should the last and highest bidder fail to comply with the terms of the bid within ten (10) days of the final acceptance of the bid, the entire deposit shall be forfeited, and the selling officer shall readvertise and resell the property on the same terms and at the bidder's risk on a subsequent sales day.

5. Under [28 U.S.C. § 566](28 U.S.C. § 566), it is the duty of the United States Marshal to enforce the decree of the United States District Court and under § 564, the Marshal is authorized to exercise the same powers of the Sheriff in conducting the sale. It is in the interest of justice that the sale be conducted to yield the best price through free, fair, and competitive bidding. Any act that appears to prevent a free, fair, and open sale or to suppress the bidding or which otherwise adversely affects the sale, will not be allowed. If such an act occurs, then the sale will be halted. Further, the individual or individuals who perform any act which appears to contribute to the sale being halted or otherwise adversely affected, may be charged with contempt of court, to be sanctioned accordingly, including but not limited to paying for the costs and expenses of the scheduled sale.

6. Upon full compliance with the terms of sale, the United States Marshal shall convey title in fee simple to the purchaser, or his nominee; the purchaser shall be let into possession of the premises upon production of the United States Marshal's deed; and all persons holding adversely to the purchaser shall be ejected from the premises by the United States Marshal. The United States Marshal is required to file a Report of Sale as soon as practicable after the sale.

7. The proceeds of the sale shall be applied first to the costs and disbursements of this action and the expenses of the sale; and second, to the payment and discharge of the amount herein found due the plaintiff; and should any of the proceeds thereafter remain, the balance thereof shall be held until further order of this Court.

8. After the sale of the premises, and as soon as the sale by the United States Marshal is complete, reported to by the United States Marshal, and has been approved by the Court, the mortgagor, or person in possession, shall within fifteen (15) days of the date of approval by the Court, move from the premises, and give up the premises, without damage or vandalism. Upon failure of any mortgagor, or other person, to vacate the premises within fifteen (15) days of the date of approval by the Court, the United States Marshal is authorized, empowered and directed to enter upon the premises, and evict them therefrom, unless prior to such date, the mortgagor, or other person in possession obtains from the Court an Order extending the time which said mortgagor, or other person shall have to vacate said premises. The United States Marshal (or deputy) is also authorized to remove from the premises any furniture or other possessions of the mortgagor, or other person in possession, and any interference with the activities of the Marshal will be upon pain of contempt of Court.

**IT IS SO ORDERED.**

                                                           s/Henry F. Floyd
                                                         Henry F. Floyd
                                                         United States District Judge

May 19, 2009
Spartanburg, South Carolina